156 So.2d 900 (1963)
Otis PHELPS, Appellant,
v.
T.O. MAHAFFEY, INC., a Florida corporation, and M.T. Ruke, doing business as Ruke's Produce Transport, Appellees.
No. 3526.
District Court of Appeal of Florida. Second District.
October 16, 1963.
*902 Charles L. Steinberg, of Fishback, Whitaker, Davis, Dominick & Troutman, Orlando, for appellant.
T.G. LaGrone, of Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, for appellee, T.O. Mahaffey, Inc.
James A. Franklin, Jr., of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee, Ruke.
SMITH, Chief Judge.
The appellant, Otis Phelps, as plaintiff, filed his second amended complaint in chancery against the defendants, appellees here, seeking foreclosure of an alleged statutory mechanic's lien in one count and foreclosure of an alleged equitable lien in another count. After the defendants filed answers generally denying the facts alleged in the plaintiff's complaint, the cause proceeded to final hearing. At the conclusion of the plaintiff's case, both defendants moved for a decree in their favor. The court entered its findings of fact and law and subsequently entered a final decree in favor of the defendants. The court denied plaintiff's motions for rehearing and for modification of the final decree, and the plaintiff brings this appeal.
By entering the final decree at the conclusion of the plaintiff's case, the court necessarily found that the plaintiff had failed to prove the essential facts necessary to entitle the plaintiff to any of the relief which he sought. The facts leading to the instant litigation are as follows: In the Fall of 1960, Mr. T.O. Mahaffey, the President of the defendant corporation which bears his name, told the plaintiff that he, Mahaffey, and another person were planning to build a warehouse and do some paving. At this time, Mr. Mahaffey had contracted for the purchase of the real property and he subsequently purchased the property on behalf of the corporate defendant. The parties do not raise any question as to Mr. Mahaffey's authorization to contract for the corporation. The parties have treated, and therefore we treat, Mr. Mahaffey and the corporate defendant bearing his name as one entity. Mr. Mahaffey introduced Phelps to Mr. Ruke. Mr. Mahaffey said: "We [Ruke and Mahaffey] are planning to do some paving and build a warehouse." Phelps testified that Mr. Mahaffey told him and Mr. Ruke to "talk it over and whatever settlement we made was up to us." Mr. Mahaffey then left Phelps and Ruke at the site discussing the job. Mr. Ruke designated the area to be paved and told the plaintiff to start immediately at $1.50 per yard for approximately 4,100 yards. After beginning the work, the plaintiff became concerned as to who would pay him, since that part of the contract had not been discussed. The plaintiff questioned Mr. Mahaffey, who replied that if the plaintiff had been told to go ahead, that he, Mr. Mahaffey, would stand behind him and see that everything was taken care of. About a month later, on partial completion of the work, the plaintiff mailed a bill to Mr. Mahaffey, whereupon Mr. Mahaffey stated that he would accept responsibility for only one-sixth of the bill. Mr. Ruke disclaimed all responsibility. Mr. Mahaffey gave the plaintiff approximately one-half of the amount of the bill on condition that he pay back a substantial part when Phelps was paid in full by Ruke. Plaintiff admits that Ruke never told the plaintiff that he, Ruke, would pay the plaintiff. There was no written agreement or lease between Mahaffey and Ruke.
The paved surface was adjacent to a freight-truck terminal and warehouse owned by Mahaffey and constructed for the principal use of Ruke, all located on the real property owned by Mahaffey.
*903 Ruke moved into the major portion of the building prior to completion, with the understanding that Mahaffey was to complete the warehouse and that Mahaffey and Ruke were then to agree upon the amount of rent per month after they found out how much the warehouse was going to cost Mr. Mahaffey. Ruke paid Mahaffey rent beginning at the middle of November until January, when Ruke moved from the premises. Ruke's discussions with Mahaffey included not only the construction and use of the building, but the use of a paved area around the building. Mr. Mahaffey, called by plaintiff as an adverse witness, testified that his agreement with Ruke was that if any paving was to be done, the paving would be Ruke's responsibility. He explained his subsequent agreement to pay one-sixth of the payment as follows: he, Mahaffey, increased the size of the warehouse by one-sixth over that size requested by Ruke, so Mahaffey felt the increase was his obligation. Mr. Mahaffey did not deny that he made the statement in his prior deposition that in discussing the matter with Ruke, he had stated to Ruke that he, Mahaffey, would handle the paving. In arriving at the amount of rent subsequently paid by Ruke to Mahaffey, the cost of paving was not considered as a factor. The contemplated lease between Mahaffey and Ruke never materialized. Ruke vacated the premises in January, and Mahaffey rented the premises to another tenant. After completion of the work, the plaintiff filed a claim of lien and within one year thereafter instituted this action for foreclosure thereof.
In its findings of fact and law, the court found: (1) that the plaintiff failed to prove the existence of a contract between himself and Mahaffey, either for the construction of the improvements or for the payment of the same; (2) that the plaintiff failed to prove the existence of a lease between Mahaffey and Ruke by which Mahaffey became obligated to Ruke to provide and pay for any paving; (3) that Ruke was a tenant at will for only a portion of the time while the work was in progress and that he did not have any interest in the land upon which a lien could attach; and, (4) that the plaintiff failed to file a notice of the pendency of this action as required by § 84.21, Florida Statutes, F.S.A. These findings of fact are substantiated by the record. The finding that there was no contract between Phelps and Mahaffey precludes the privity of contract necessary to establish the statutory lien. Lee v. Sas, Fla. 1951, 53 So.2d 114. The finding that there was no lease between Mahaffey and Ruke removes the case at bar from the decisions granting a contractor a lien against the owner under certain circumstances where the contractor contracted with a lessee of the owner. Such a case is Tom Joyce Realty Corp. v. Popkin, Fla.App. 1959, 111 So.2d 707. The finding that the plaintiff failed to file a notice of the pendency of the action within one year after he had filed his claim of lien bars the action and discharges the property from the lien. Stilley v. Post, Fla.App. 1963, 148 So.2d 569. These findings sustain the decree of the trial court entered in favor of the defendants insofar as it relates to the count seeking foreclosure of the alleged statutory mechanic's lien.
The remaining finding of the court, to the effect that Ruke was a tenant at will for only a portion of the time while the work was in progress, and that he did not have any interest in the land upon which a lien could attach (he was not in possession), together with plaintiff's admission that Ruke did not agree to pay for the improvements, will sustain the court's decree in favor of Ruke on both counts.
The question remains as to whether or not the plaintiff proved all of the facts necessary to establish his right to an equitable lien on the property of the corporate defendant. An equitable lien is based upon the fundamental maxim of equity that no one shall be unjustly enriched *904 at the expense of another. Such a lien may be implied and declared out of general considerations of right and justice. Scott v. Kirtley, 1934, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661. Equitable liens are necessarily based on the doctrine of estoppel and often arise in cases where a party innocently and in good faith makes improvements on the property of another. Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. Although the type of work done is entirely different, the basic principles justifying an equitable lien in the instant case are substantially the same as those in Dewing v. Davis, Fla.App. 1960, 117 So.2d 747. There, the court (Judge Kanner) explained the factors distinguishing the granting of an equitable lien in that case from those requiring denial of an equitable lien in the companion case of Dewing v. Nelson & Company, Fla.App. 1960, 117 So.2d 744. The same distinguishing facts are applicable here.
Where a plaintiff claimed, but in fact did not have, a statutory lien, such a claim does not bar his suit for an equitable lien. Palmer v. Edwards, Fla. 1951, 51 So.2d 495; Green v. Putnam, Fla. 1957, 93 So.2d 378; Tremont Company v. Paasche, Fla. 1955, 81 So.2d 489; and Ross v. Gerung, Fla. 1954, 69 So.2d 650. The case at bar is not one in which the claimant had a statutory lien and, having failed to institute an action to enforce the same, subsequently endeavored to establish an equitable lien which was denied on the ground that equitable liens become necessary only on account of the absence of an adequate remedy provided by law, as was the case in Kimbrell v. Fink, Fla. 1955, 78 So.2d 96; Blanton v. Young, Fla. 1955, 80 So.2d 351; Wood v. Wilson, Fla. 1955, 84 So.2d 32; and Rood Company v. Luber, Fla. 1956, 91 So.2d 629. The court's determination that the plaintiff did not have a statutory lien removes from our consideration the question pursued by the appellee; that is, whether an equitable lien may be allowed where a statutory lien once available had been lost by failure to perfect the same. The court found that there was no statutory lien. Likewise, there is no question of laches because this action was instituted within one year from the time of the filing of the claim of lien, and this would have complied with the requirements for a statutory lien had one existed. Thus, the principles of law announced in the Kimbrell, Blanton, Wood and Rood decisions are not applicable.
The plaintiff introduced evidence to establish the reasonable value of the work done and the materials furnished in placing the paving upon the corporate defendant's property. Cf. Ross v. Gerung, supra. While acting for this corporate defendant, Mr. Mahaffey purchased the property for the corporation during the negotiations by the parties. He approached the plaintiff with the statement that he and another person were planning to build a warehouse and do some paving. He introduced Mr. Phelps to Mr. Ruke. During the course of the work, he reassured Mr. Phelps with the statement: "Well, if you were told to do it, go ahead. I will stand behind you and see that everything is taken care of." The plaintiff's evidence is sufficient to justify the conclusion that Mr. Mahaffey's actions, together with his failure to advise Mr. Phelps of the ownership of the property and of Ruke's interest  or lack of interest, misled Mr. Phelps, who innocently and in good faith improved the corporation's property, enhancing its value and making it suitable for the contemplated use. Mr. Mahaffey received and accepted the benefits of the improvements. The relations of the parties, and the circumstances of their dealings, are sufficient to establish a prima facie case on plaintiff's part for an equitable lien upon general consideration of right and justice. The facts here establish more than a moral obligation alone, as was the circumstance in Hullum v. Bre-Lew Corporation, Fla. 1957, 93 So.2d 727.
That part of the final decree in favor of the corporate defendant is reversed for *905 further proceedings in order that that defendant may offer evidence in its defense to the same extent as if its motion had not been made and granted.
The decree is affirmed in part and reversed in part.
SHANNON, J. and McNATT, JOHN M., Associate Judge, concur.